Wendell Mackey v. Jeff Rising, et al. Argument not to exceed 15 minutes per side. Mr. Isa Haddad, you may proceed for the appellant. Thank you. Good morning, Your Honors. My name is Isa Haddad on behalf of the appellant. I respectfully reserve five minutes for rebuttal. Fine. Thank you. This case is a civil rights case that started when the city commissioner calls my clients elderly mother at 1230 in the morning complaining about the posts that my client posted on Facebook. And the subject nature of those posts were about his position as elected official city commissioner for the city of Adrian. When the lawsuit got filed, the city commissioner went back to the city. He was no longer an acting city commissioner and said, you know, I need representation on this one. Under the law, under the statutory created laws for the Michigan Municipal Liability Pools, he must be acting under the color of law. And when he requested and was granted representation, and that's what counsel is here, it's from the MMLLPP to show that this is a government action. This is something under the color of law. And then to come to court and claim I was not acting under the color of law. It's a complete waiver. I have a question. This might not be dispositive of anything, but why did you have standing to challenge the insurance representation relationship on the other side? It wasn't standing. It was to put the defendant in a position that he can't argue he was not acting under the color of state law. As a threshold, how did you have the ability to challenge this? It just feels like a taxpayer standing sort of claim in the sense that there's this arrangement between this city and public officials that really doesn't impact you any different than it would any other citizen of Michigan, I guess. So it was a strategic move when we filed our motion to enjoin the use of public funds to lock him in to either say he's acting under the color of law or not acting under the color of law. And so by putting that motion out there, and Judge Graham denied that motion, we locked him into a position where he should... I understand what you did. I'm familiar with this kind of motion, and I wasn't sure really why you had a basis to assert it. My client was a citizen of Adrian. He paid a lot of taxes in Adrian. Yeah, that's my point. Typically, taxpayers don't have standing to just raise issues, general complaints they have with the government. It was also to show that the defendant was committing a fraud against the state, against the statutes that shows you can't claim... You've got a cause of action for fraud or something. Anyhow, it's just an odd feature of the case.  Is your argument here now that your opponent is stopped from saying that he was not acting as a state actor because he sought coverage from the get-go on this case, from the MML? Yes, as well as in order to obtain the government benefits of a free lawyer for their representations, he can't claim that he was not a government actor. You look at a government program... Can he seek MML coverage because your client sued him saying he was a state actor? Because you brought it as a 1983 claim, and therefore your client, the plaintiff here, is suing the defendant saying he hurt me in violation of 1983, and therefore MML has some duty to the city official to represent him, at least as long as there's an allegation of state action. It goes directly to the Matuk case. In the Matuk case, the plaintiff alleged that Mr. Matuk was acting under the color of law as a police officer. And the MML defended themselves saying, well, it's not what the pleading said, it's what we determined. And they took one position in that case, and they're taking the exact opposite position in this case, saying that just because of the way you pled it, we get to defend him. But that's the way we plead. We have to plead things certain ways. We have to claim for 1983 claims he acted under color of state law. And when you go to them in the initial interview to say, all right, what did you do, and they determine the defense is it was not acting under the color of state law, and that's what you rely upon, you don't get the benefits and the coverage. It's just like Social Security. But it is well established in insurance law that insurers have a duty to defend, even if there's a possibility of coverage. Now, here's the tricky thing is, the MML is not insurance. It's similar to insurance, but it doesn't comply. It doesn't follow the insurance. Why would there be a waiver or a judicial estoppel? Judicial estoppel, for instance, is based on inconsistent positions in the litigation. They've argued the same thing throughout. You might disagree with them as a matter of state law, but we're not going to reach the state law question. And their argument is, under state law, we're allowed to defend as long as the complaint's allegations bring it within the scope of coverage, meaning you could potentially be a state actor. So the insurance question depends on the allegations in the complaint, but that doesn't mean that they have to accept those allegations as true. But for insurance coverage, it just depends on the allegations in the complaint, and they're still allowed to say the allegations aren't true. They can say that the state actor isn't true, just as you can say, I didn't threaten anybody. So I don't understand why there's been any type of inconsistency. They've argued the same thing throughout. Insurance, because of what you said in the complaint, but we're allowed to defend by saying your complaint is inaccurate. Under the statute, the only way... We're not going to interpret a state statute in this federal 1983 case. Your claims are judicial estoppel, that they've said something inconsistent. There's nothing inconsistent about what they've said. They've always said that the insurance depends on the allegations, and that doesn't somehow preclude us from saying that your allegations are not true. He's claiming that he is entitled to a public defense under the liability pool. In order to get that position, you have to be acting under the color of law. But their point is, no, state law is broader. It only depends on the complaints allegations. Under the elements in the statute, to... I don't care about the statute. We're not going to interpret a state statute in this federal 1983 case. Your position is, they've somehow been acting inconsistent in the litigation, so judicial estoppel should apply. And my point is, no, they've taken the same position throughout. What has been the inconsistent position in this litigation? In order to obtain the government attorney, he's got to show that he was a state actor. And then the inconsistent position is that my defense is I was not a state actor at the time that this alleged incident occurred. Your first point is overbroad. They've always taken the position that in order to get coverage, the complaint has to allege your state action. You don't actually have to be a state actor. Just the complaint has to allege it. Correct. But that means he'd have to have his own private funded attorney. But in order to obtain an attorney from the NML, he would have to claim he was acting under the color of law. Which goes into the third argument that we have. So under your theory, he doesn't get a lawyer. He has to disclaim he's a state actor to defend himself. He doesn't get the lawyer. Is this an indemnity policy? Is this an indemnity arrangement? He would be indemnified if he lost? It's my understanding is that if he was found to be acting under the color of law, then he could go back to them to regain indemnity. But they have an interest in the case, which is why they want to represent him in the first instance. In other words, you want him to lose and then go back to them and say, well, it turns out I was a state actor, so now indemnify me. But they want the right to defend the case to begin with because they're on the hook. And the dilemma with that is? They don't know what the ultimate answer in the case will be, but they want to argue that there's no liability. Under a government program such as this, or Social Security, or Medicare, or those things, you have to qualify first to get the government lawyer. And he never qualified by claiming he was not acting under... You're analogizing this to Medicare benefits and Social Security benefits? It's created by statute, and in order to qualify for Social Security, you must fill out the application and meet all the elements. If, for example, you don't qualify because of your age, well, then you don't get it now because you're going to turn older later on. In this case here, when he went and applied for it, he asked for an attorney, and his whole defense was, I was not a state actor. And so you can't have it both ways. And then when you get to the fact that there is a question of fact on whether he was a state actor or not, the questions in his deposition was, we do everything from home, personal cell phones, personal cars, we meet outside the office, it's the topic of discussion. I understand this was your strategy in the case to put him in this catch-22 position, but I just don't think this is how the regime is supposed to work. You say it's not an insurance policy, but in this context, this is absolutely how it works. You get the coverage, but you deny the allegations, and you defend the case. Insurance can go above and beyond if they feel they want to send coverage to someone they can. Under the state statute, they're construed by the rules built within. My time is up for this. If there's something more you want me to ask before I sit down, thank you, Judge. Thank you. Good morning. May it please the Court. Christian Huffman on behalf of Defendant Jeffrey Rising. I would just, I intend to be very brief. I think I've adequately covered everything in the brief that I filed with the Court. As was pointed out, we don't believe that the doctrines of waiver or estoppel can apply here. The necessary element of plaintiff's claim is that he proved that Mr. Rising was acting under color of state law. Under Michigan law, he has the right to have the MML defend him against all elements of plaintiff's claim, including that element. So if a city council member were in an automobile accident when driving to the grocery store for personal reasons, could that city council member ask the MML to cover him for the lawsuit that the victim of the automobile accident brought against him? He can ask. They can, in the case which he references, they can deny and refuse to provide coverage. But if it's later found by a court that they owed coverage, they're penalized for it. Bad faith denial? What the case law actually says in Mattook is they have a duty to provide a defense until such time as there's been such factual development for a legal determination to be made that it cannot fall within the terms of court. So that then would mean that any hypothetical city council member could be engaged in purely private activity, but could say to himself, aha, I'm a city council member. I want to try to get the MML to take care of me. And that your position then would be that would not be asserting that that hypothetical city council member was a state actor, even though that's the way you can get MML coverage. Because in my hypo, where there's no connection whatsoever with official duties, it's just an over-eager city council member trying to get coverage under the MML. I think I understand what your Honor's trying to get at. If the facts here had been a little bit different, if this conversation had happened two weeks later after the election had happened, he no longer was a city commissioner, the MML would probably say there's no way you could have been acting within the course and scope of your employment as a city commissioner because you no longer were one. Or for the situation as it was in Mattook, where the Court of Appeals, after there had been discovery, said this investigation was not being conducted by the police department that you worked for, so anything you did could not have been within the course and scope of your employment, and they made the determination then. Until, what they say is until there's been such factual determination, until there's been some discovery done that there can be a legal determination, they have to pay, and if they don't, they run a risk of being penalized for it. So in your Honor's hypothetical, they could deny, but they would be taking a gamble. Here, they didn't know, at the beginning all they had was the allegations in his complaint, no discovery. But the question is, is the mere asking for MML coverage by itself, even in my wild hypothetical where the person shouldn't, the city council member shouldn't be covered, is the mere asking for MML coverage a statement by this hypothetical city councilman that he thinks he's a state actor and he thinks he's engaged in state action because he wouldn't be asking for coverage if he didn't think that? No, your Honor. Him asking for coverage is him saying they are alleging that I was acting on behalf of the state, which is an element of their claim, and I have the right to have you hire an attorney to prove that I was not. So I do not see that, nor do I believe that the Michigan courts would see it. So why was your client not a state actor if we completely forget about the MML? Well, this court has stated the test varying ways. Limke v. Freed calls it the state official test. Waters didn't really give it a name, but the elements have been stated various ways. But what this court says in Waters is, the key determinant is whether the actor intends to act in official capacity or to exercise official responsibilities pursuant to state law. Here, plaintiff proffered no evidence that my client during the conversation even mentioned that he was a city commissioner. Do you think it would be a different case if... I know your client denies the allegations of a threat, but we have to take that as true at this stage. Do you think it would have been a different case if it happened at a city council meeting and Mackey showed up and he said, you better take that Facebook post down or somebody's going to get hurt? Do you think that would be enough to make it state action? I don't know that that would be enough to make it state action. It would definitely be a much closer legal call for the judge to make than I think in this instance. It seems to me if that's not a state action, then is any speech state action? I mean, you're city council at your council table and you're having public comment period and you make this threat. Well, at first your honor said if it happened at city hall, I didn't know your honor... Oh, I meant like at a city council meeting, like an official meeting. If it's during a city council meeting, I think that would be tough to argue that that would... And what's the difference? Because at that point he's actually in his office acting in his capacity. Here, first off, plaintiff's Facebook posts were talking about conduct by my client that were 20 years before he was even in state office. He wasn't talking about any action that my client took as a city commissioner. But beyond that, at the time of the phone call, which is 1230 at night on his personal iPad using his personal Facebook account, he calls the plaintiff's mother, who he knows in a personal capacity, does not say, I'm calling you as a city commissioner, he just says his name, Jeff Rising. Just tell your son to stop saying stuff about me on Facebook. He doesn't threaten her with any state action, makes no indication that he's calling in his capacity as a city commissioner at all, let alone try and exercise his authority as a city commissioner. So if he had said the same things, but also said, hi there, you know I'm a city commissioner, and then said all the same things, would that... Again, I think that would be a much closer call. Although in the Waters case, dealing with the aldermen, they said that in that case, they found comments like that to be simply hyperbole, like throwing his weight around. What if he had threatened state action? So he said, you better take that Facebook post down, or we're going to fine you, or the police are going to come and arrest you. If he had threatened to use the powers of his office to take some action, such as sending the police out, I think that would be a different scenario. Here at most, if you take what he says is true, he says, or somebody's going to get hurt, I think he's wanting that to be interpreted as a threat of physical harm, which would be intentional conduct that isn't even reasonably within his scope of his authority as a city commissioner. But couldn't it be someone's going to be hurt, meaning civil consequences, like a libel suit, or dragging people through the mud? I guess theoretically it could be. But he would not have the ability as a city commissioner to bring civil action. He would have to do that in his personal capacity unless he went and commenced... You'd have to get a majority of the city council to go along with him. Yes, Your Honor. You mentioned the Linky case, which is a recent case of ours, but is that the best case, is that the most analogous case? That case was about the use of social media pages and whether that reflects state action, and this started with a social media post, but the actual conduct by the public official was not use of social media. So are those cases a little bit different? I relied more on the Waters case because it was more factually analogous. The reason that I cited Linky here is Linky, as I read it, is trying to draw a distinction, frame the test in such a way that it's when you differentiate between someone who actually has a public position when they're acting within the course of scope of their public position or private position, and it's saying that most of the other tests that are out there are dealing with when somebody actually isn't a state actor, when can their action be attributable to the state. Like the security guard in the Bigby case, when Bigby could be held liable for that. Bigby. I apologize, Your Honor. But as I said, the timing of the phone call, what he said during the phone call, nothing about any of this entire situation involved any discussion of any duties or business of his as the city commissioner. As I said, even the conduct that Plaintiff was posting about were things that happened 20 years beforehand, my client was not running for reelection. He simply had posts that he thought were going to hurt his private real estate business and he wanted them taken down. Unless the court has any more questions, I don't really have anything else to add. Thank you. The subject matter that we're getting to, as Judge Moore stated, if this was a car accident and it was applied as a 1983 case, they said that they would have a duty to defend him. But they know in the beginning of that case that it's not under color of state law. And they would have no duty to defend him, they would deny that coverage off the offset by learning the facts of the case. And that's what happened here. It shows here that there is any relationship to his duties as a city commissioner. Now here's the thing. There's no record evidence in the district court case of what his duties or policies were regarding phone calls or private use of phones. When we took the defendant's deposition, he stated the way to determine if it's city commission business or personal business is the topic of the conversation. And if you look at the topic of the conversation, it relates directly as his position as a city commissioner. In the Facebook post, he clearly states, you know, the corrupt politics, here's our morally corrupt, former cocaine-using city commissioner, Jeffrey Rising. And that's what he's calling about. The topic of the conversation is him being a corrupt city commissioner. So your point is he made a threat that somebody was going to get hurt? And I assume that you took that to mean physically hurt. Physically, civilly dragging through the mud, just like he was with the former mayor, got a PPO against him that didn't stick for showing up at committee meetings and challenging the mayor. He got his, the local judge. Any private party could get a PPO if you feel threatened. It's not like only city council members can get PPOs. Correct. But in this case, the best, the mentor of Jeff Rising is the former mayor who got a PPO on bare bones allegations from his, you know, sitting circuit court judge who was his friend, which wasn't upheld in the Michigan Court of Appeals. Basically, there's no way that PPO should have been granted. And that's what my client was going through at the time that this had transpired. So I could see your point, if it was a threatened arrest, because that's the use of state action. A threatened fines or something like that. But I don't think every private party is turned into a state actor simply because they say, if you don't stop talking about me, I'm going to get a PPO against you. Whether that's right or wrong, I don't think a threatened action that any person in Michigan can threaten is enough to turn that person into a state actor. The First Amendment retaliation case is he had free speech, and he was complaining against the government. And the government comes back and says, somebody's going to get hurt if you continue to do this. That's enough for retaliation in the First Amendment. Tying it in, the topic of conversation is I'm challenging your position as a city commissioner, and you're coming back to me and saying you better stop it or somebody's going to get hurt. It's clear First Amendment retaliation as the person acting under the color of law, because his own testimony was determined by the topic of the conversation. And here... Your client said, if you don't stop labeling me, I'm going to file a libel suit. Wouldn't that be state action, if that's all that happened? Your client said something that was arguably libelous about cocaine use, alleging Rising engaged in cocaine use. And Rising calls your client's mother and says, tell your son to stop labeling me or I'm going to file a libel suit. Probably not. However, in this case, he said somebody's going to get hurt because he's complaining about me being a morally corrupt city commissioner. The topic of the conversation is, when he called the mother, the real estate agents, they had no personal business going on at the time. It was done at 1230 night, shortly after these posts were made. And all the elements show that it was fairly contributable to state action. And the city has a position to defend that, because it's talking about all the politically corrupt offices in that city. And that's why it's acting under the color of law, because the joint test, the joint action test, the city has a leg in it to say, yes, we want to defend this because it's state action and we want to protect our interest in it as well. And so it all goes to show that there is a question of fact, if he was acting... Correct. He was a real estate agent at the time. And what happened was, it wasn't to further his real estate business, because he said he had no business with her. And there was no statement said that as to further his real estate interest. It was only to get him to stop talking about the corrupt politics of the city of Adrian. Thank you. Thank you both. The case will be submitted and the clerk may call the next case.